UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | CRIMINAL NO. 6:03-1092 |
| | ) | |
| vs. | ) | |
| | ) | |
| TREMAYNE GRAHAM | ) | |
| JERRY DAVIS | ) | |
| TIFFANY GLOSTER | ) | |

SENTENCING MEMORANDUM

Pursuant to the Court's direction, the United States files this memorandum outlining the Government's legal positions with respect to sentencing. As described below, all three defendants have materially breached their several plea agreements with the Government. The United States therefore respectfully that this Honorable Court sentence each of the defendants to the maximum term available under the law.

**I. FACTUAL BACKGROUND**

A. Introduction

The Court has presided over a number of proceedings in this very complex case and is well-aware that Defendants GRAHAM and DAVIS are major drug dealers who have distributed well over one thousand kilograms of cocaine throughout the United States. Therefore, the United States will concentrate on the facts relevant to the issues of breach-- and the appropriate consequences for same.

All three of the defendants referenced above filed numerous pretrial motions, including motions to suppress various pieces of evidence. The parties briefed those

issues, and this Court conducted extensive suppression hearings on February 21 and 22 ,2006. After the Court denied the defendants' suppression motions, all three of the defendants began to explore plea negotiations.

Ms. GLOSTER was the first defendant to enter a plea, and she did so on March 6, 2006. A jury was selected the following day (March 7, 2006) for the reaming two defendants, with the trial scheduled to begin in early April. Both GRAHAM and DAVIS entered guilty pleas the week before the trial was to commence, with GRAHAM entering a plea on March 27 and DAVIS entering his plea the following day (March 28, 2006).

B. GLOSTER's Plea

GLOSTER's plea was based on a negotiated plea agreement containing substantial benefits to her. She pled to an information charging conspiracy to launder money in violation of Title 18, United States Code, Section 371; this count has a five-year statutory maximum (as opposed to the twenty-year maximum applicable to the count charging her in the Seventh Superseding Indictment. GLOSTER refused to cooperate; however, she agreed to be debriefed on assets, agreed to forfeit her interests in all forfeitable assets, agreed to the entry of a money judgement and agreed to take and pass a polygraph examination to the Government's satisfaction. In return, the Government agreed that if she complied with **all** of the provisions in the plea agreement, she would not be charged with other crimes and she would gain the benefits of an agreed-upon sentence (24-30 months in jail) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties specifically agreed that if GLOSTER did not abide by the terms and conditions of the

agreement, the 11(c)(1)(C) clause was not triggered, that the United States could argue

for a maximum sentence, and that she could not withdraw her plea.

The plea agreement ( copy attached as Exhibit A) confirms the summary outlined

above. Paragraph 3(e) of the plea agreement reads as follows:

> The Defendant agrees to submit to a full and complete debriefing as to any and assets held or acquired by her and her husband and others working with her husband in his illegal drug business. The Defendant agrees to further agrees to make a full and complete disclosure of all assets over which Defendant currently or previously exercises control which are subject to forfeiture and as to all assets which are held or controlled by a nominee. The Defendant must fully disclose any and all such assets known to her to be subject to forfeiture under any provision of law and provide a full and complete disclosure concerning her knowledge or and acquisition of such assets, and must fully disclose all of her knowledge as to how those assets were acquired, including but not limited to disclosing the true source of the funds involved. The Defendant agrees to submit to such polygraph examinations on the issue of assets as may be requested by the Attorneys for the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Government. Defendant further agrees that her failure to pass any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Attorneys for the Government within the Agreement becoming null and void.

> Paragraph 5 of the agreement reads as follows:

> That in the event the defendant complies with **all** the terms of this Agreement, both parties agree that the appropriate disposition of this case (irrespective of any fines and\or forfeitures) is a sentence of between 24-30 months actual incarceration, followed by the appropriate statutory term of supervised release. . In the event that the defendant complies with **all** terms of this Agreement and the Court declines to impose this sentence, the Defendant will have the right to withdraw her plea. FRCRP 11(c)(1)(C). If the Defendant does not comply with **all** the terms of this Agreement, the United States will seek the maximum sentence allowed by law and the Defendant will not be allowed to  withdraw her plea.

The language in the plea agreement is plain and unambiguous, and this interpretation was confirmed in the Rule 11 proceeding held before this Court on March 8, 2006. A transcript of the proceeding indicates as follows:

> **THE COURT:** At this time I will ask the Government to summarize the plea agreement.
>
> **MR. MOORE:** Yes, sir, Your Honor.
>
> **THE COURT:** Listen carefully, Ms. Gloster, because when they are finished summarizing, I will ask you whether you agree with that and understand it fully, the plea agreement.
>
> **MR. MOORE:** Yes, sir, Your Honor. In Paragraph 1, again, she agrees to plead guilty, as Your Honor's gone over with her, to this charge and the elements are outlined.

(GLOSTER plea transcript, p. 13.) [1]

*******************

> In Paragraph 5 she agrees -- Subparagraph 5 she agrees to submit to a full and complete debriefing as to any and all assets held or acquired by her and her husband and others working with her husband in his illegal drug business. What that means is she has to tell us about any and all assets that she and her husband have acquired and/or that they have acquired in connection with any other persons involved in his drug business. She doesn't have to provide information about them separate and apart from those assets, but she has to tell us everything that relates to any assets acquired through that drug trafficking activity.

---

[1]The plea transcripts are voluminous and the United States assumes that the Court has access to copies of same. Therefore, the United States has not attached copies of these transcripts to the instant memorandum. The United States will be more than happy to supply the Court with copies if necessary, however.

**MR. SWERLING:** And just so -- this is some concern of hers. When it says "and others" it would only be in connection with assets owned by she or her husband.

**MR. MOORE:** That's correct, in which she or her husband have any interest in. That's correct. She agrees to make a full and complete disclosure of assets. She's got to disclose any and all assets known to her to be subject to forfeiture. And she also agrees to submit to polygraph examinations on the issue of assets. And she understands that if she fails to pass that polygraph examination as to assets to the Government's satisfaction, all of the Government's obligations within this agreement are null and void. So if she fails –

**THE COURT:** What do you mean by that? What obligations?

**MR. MOORE:** Well, the Government has agreed to recommend a binding -- has agreed to a binding recommendation in this case of 24 to 30 months. The Government agrees that that is the appropriate sentence. If she fails that polygraph test, Your Honor, the Government is no longer limited to recommending a specific sentence and we can ask Your Honor to impose the statutory maximum of five years, which we would do.

**THE COURT:** Well, what concerns me about that, you are proposing in the plea agreement it's been agreed to an 11(c).

**MR. MOORE:** 11(c)(1)(C), yes, Your Honor.

**THE COURT:** And under that rule, as I understand it, the Court would have to agree to it at this point.

**MR. MOORE:** The Court does not have to agree to it at this point. The Court has to -- the Court has to at the end of -- at the time of sentencing, if she has complied with all terms of the agreement, the Government will make that recommendation for 24 to 30 months and Your Honor will have a Presentence Report at that time. If she's complied with all the terms of the agreement and Your Honor rejects that disposition, at that point she would be allowed to withdraw her plea. The Court is not required to accept this plea agreement at this time. And the Court is not required to accept that recommendation at this time. Because the Government won't be making that recommendation and she won't have the benefits of that recommendation if she fails the polygraph test.

**THE COURT:** So you are telling me if she fails a polygraph, for instance, or does not fulfill her obligation under the plea agreement, that I would be required to set aside her plea?

**MR. MOORE:** No, sir. If she -- the only way that Your Honor would be required to set aside her plea is if she complies and Your Honor does not believe that a 24 to 30-month sentence is appropriate. If she fails the polygraph test, she's stuck with her plea. The 24 to 30-month recommendation is no longer binding on anyone and Your Honor can sentence her to five years.

**THE COURT:** That's what I wanted to clarify. Because maybe I heard you wrong, but I don't know if you said it that way to start with.

**MR. MOORE:** I haven't got there yet.

**THE COURT:** Okay.

**MR. MOORE:** But the bottom line is with respect to the polygraph, Your Honor, if she fails the polygraph test, all the Government's obligations, including this binding recommendation, are out the window and I'll get to that in a moment.

**MR. SWERLING:** Just while Mr. Moore's on that, and that was my understanding as well, about the Rule 11 plea. But with respect to the polygraph, Mr. Moore and I discussed the fact that we would be entitled -- if she did fail and the Government's contention is she failed it, we'd be entitled to see the polygraph results and the charts and we would have the opportunity to contest that.

**MR. MOORE:** I have told Mr. Swerling that. That's the way I have always done it in 16 years of practice.

**MR. SWERLING:** So I just didn't want –

**THE COURT:** So it would be up to the Court?

**MR. SWERLING:** Basically, it would be up to the Court as a factual issue.

**MR. MOORE:** The Court would have to determine whether the Government is exercising –

**THE COURT:** If, for instance, the Government contended that she failed it or failed to comply with any other part of the agreement –

**MR. MOORE:** Yes, sir.

**THE COURT:** -- and if you contest it, you are allowed to -- it would be left to the Court to determine whether or not she did?

**MR. SWERLING:** That's correct, Judge. I wanted to make sure for her benefit that she knew that.

**MR. MOORE:** It would be up to the Court to determine whether the Government was taking the position that the breach was taken in good faith, yes, sir. It would be up to the Court to determine that.

(GLOSTER plea transcript, pp. 16-20).

*****************************************************

The Government agrees that in the event that she complies with all the terms of the agreement, that includes all the forfeiture provisions, making full disclosure about the assets, and passing a polygraph examination, that the Government agrees that the appropriate disposition of this case is a sentence of between 24 and 30 months actual incarceration followed by a term of supervised release.

If she complies with all the terms of the agreement, there is no question about the polygraph, and the Court then declined for whatever reason to oppose the sentence, only then would Your Honor be required to allow her to withdraw her plea. Does that help with Your Honor's understanding of that particular paragraph?

**THE COURT:** Yes. And I have no problem with that and I will accept that.

**MR. MOORE:** She understands that the matter of sentencing is within the sole discretion of the Court and that the -- her sentence will be imposed after the Court considers the advisory guidelines. She understands that any estimate of probable sentencing range she may have received is a

prediction, not a promise, of course. She understands if she complies, Your Honor would accept the sentence of the 24 to 30 months or allow her to withdraw her plea.

(GLOSTER plea transcript, pp. 22-23)

The Rule 11colloquy continued, and the defendant agreed that the Government had correctly summarized the plea agreement. The Court then entered a finding of guilty.

## C. DAVIS' Plea

DAVIS' plea agreement was similar in nature to his wife's. He pled guilty to Counts 1 and e of the Seventh Superseding Indictment. Like his wife, he would not agree to cooperate, but he did agree to be debriefed on assets, agreed to forfeit his interests in all forfeitable assets, agreed to the entry of a money judgement and agreed to take and pass a polygraph examination to the Government's satisfaction. In return, the Government agreed that if he complied with **all** of the provisions in the plea agreement, he too would gain the benefits of an agreed-upon sentence (35 years in jail) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties specifically agreed that if DAVIS did not abide by the terms and conditions of the agreement, the 11(c)(1)(C) clause was not triggered, that the United States could argue for a maximum sentence, and that he could not withdraw his plea.

The plea agreement ( copy attached as Exhibit B) confirms the summary outlined above. Paragraph 3(e) of the plea agreement reads as follows:

The Defendant agrees to submit to a full and complete debriefing as to any and assets held or acquired by him and others working with him in his illegal drug business. The Defendant agrees to further agrees to make a full and complete disclosure of all assets over which Defendant currently or previously exercises control which are subject to forfeiture and as to all assets which are held or controlled by a nominee. The Defendant must fully disclose any and all such assets known to him to be subject to forfeiture under any provision of law and provide a full and complete disclosure concerning his knowledge or and acquisition of such assets, and must fully disclose all of his knowledge as to how those assets were acquired, including but not limited to disclosing the true source of the funds involved.

The Defendant agrees to submit to such polygraph examinations on the issue of assets as may be requested by the Attorneys for the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Government. Defendant further agrees that his failure to pass any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Attorneys for the Government within the Agreement becoming null and void

Paragraph 5 provided:

That in the event the defendant complies with **all** the terms of this Agreement, both parties agree that the appropriate disposition of this case (irrespective of any fines and\ore forfeitures) is a sentence of 35 years (420 months ) incarceration, followed by the appropriate statutory term of supervised release. If the defendant complies with **all** terms of this Agreement, and the Court declines to impose this sentence, the Defendant will have the right to withdraw his plea. FRCRP 11(c)(1)(C). If the Defendant does not comply with **all** the terms of this Agreement, the United States will seek the maximum sentence allowed by law and the Defendant will not be allowed to withdraw his plea .

Again, this agreement is straightforward and not ambiguous. DAVIS confirmed this

understanding during his Rule 11 colloquy:

**THE COURT:** Has anyone threatened, forced or coerced you in any way to get you to plead guilty?

**THE DEFENDANT:** No, sir.

**THE COURT:** Are you pleading guilty because you are guilty?

**THE DEFENDANT:** Yes.

**THE COURT:** There is no issue of restitution in this case, is there?

**MR. MOORE:** No, sir.

**THE COURT:** Has anyone including your attorney -- well, I understand and this is in the plea agreement, this is a proposed 11-C?

**MR. MOORE:** Yes, sir, Your Honor, it is.

**THE COURT:** Of not to exceed 35 years; is that right?

**MR. MOORE:** Yes, sir, Your Honor. The actual agreed upon sentence is 35 years, yes.

**THE COURT:** Okay.

**MR. MOORE:** Provided he complies with all conditions of the agreement.

**THE COURT:** I understand. I will go into the plea agreement at this time. I am in receipt of a copy of the plea agreement. I understand there is an original that's been filed.

**THE CLERK:** You have the original.

**THE COURT:** Okay. It was handed to me. Show him the last page, Sheila. I'm handing you back the original plea agreement. And on the last page of the agreement there appears to be your signature. Is that your signature?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Have you and your attorneys thoroughly reviewed this plea agreement?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand each and every provision of this agreement?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Is this the entire agreement between you and the Government?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** I will now ask the Government to summarize the essential facts of the agreement. And by doing so, the written agreement controls but I just -- and as to any items that may be omitted by the summary by the Government, that is not controlling. It is controlled by the written plea agreement. But I would like for the Government to summarize some of the basic elements of the agreement at this time.

(DAVIS plea transcript, pp. 8-10).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Subparagraph E is important so I want to go over this in a little more detail. He agrees to submit to a full and complete debriefing as to any assets held, acquired or controlled by him or his wife, Tiffany Gloster. He further agrees to make a full and complete disclosure of all assets over which he currently or previously exercises control which are subject to forfeiture and as to all assets which are held or controlled by a nominee. He has to fully disclose any and all such assets known to him to be subject to forfeiture. He has to provide a full and complete disclosure concerning his knowledge of those assets and must fully disclose all of his knowledge as to how the assets were acquired including but not limited to disclosing the true source of the funds.

He's not agreeing to cooperate with the Government in the investigation of other persons, Your Honor. So to the extent that this disclosure of assets held, required or controlled by him requires him to provide information about the involvement of nominees or other third parties, it's understood by the parties that that information will be used in forfeiture litigation, not other litigation. And that is something that the Government agrees.

He also agrees to submit to polygraph examinations on the issue of assets if requested by us. He understands that those examinations will be performed by a polygraph examiner selected by us. And he understands that he has to pass that polygraph examination to the Government's satisfaction or all the terms of this agreement will become null and void.

As we stated when Your Honor accepted Ms. Gloster's plea, of course, if the Government takes the position that he's violated the terms of the agreement and the Government takes the position that he has failed a

polygraph examination, he would be required to contest that. He would be allowed to contest that before Your Honor and Your Honor would conduct a hearing and Your Honor would make the final call. It is not left to the sole discretion of the Government, but we can choose to void our obligations and take the position he's violated the terms of the agreement if he flunks the polygraph test. He also understands that he's got to comply with all the terms of the plea agreement.

(DAVIS plea transcript, pp. 12-14).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If he complies with all the terms of the agreement, we agree the appropriate disposition of this case, irrespective of any fines or forfeiture, is a sentence of 35 years, which is 420 months incarceration, followed by the appropriate statutory term of supervised release. And that is within the guideline range that is calculated if Your Honor accepts these stipulations.

If he complies with all the terms of the agreement and the Court rejects that as the appropriate sentence, he will have the right to withdraw his plea. However, if he does not comply with all the terms of the agreement, if he fails a polygraph on the issue of assets and Your Honor determines that he has breached the agreement, then Your Honor is not required to sentence him to the 35-year sentence and he is not entitled to withdraw his plea. It's a contingent recommendation. He's got to comply with the terms of the agreement in order to get the recommendation.

Does Your Honor have any questions about that?

(DAVIS plea transcript, pp. 15-16)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THE COURT:** Having heard that summary of the agreement and having understood the total written agreement, Mr. Davis, do you agree with it?

**THE DEFENDANT:** Yes.

**THE COURT:** And do you understand it?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Wise and Mr. Rudolf, your understanding that the agreement was essentially summarized correctly?

**MR. RUDOLF:** Yes, sir. There are two other matters that are not part of the plea agreement I want to put on the record.

**THE COURT:** I want to hear it now. That's what my next question would have been.

**MR. RUDOLF:** Yes, sir. And let me make clear, they are not part of the plea agreement but they are things I discussed with Mr. Moore. One is that at some point Mr. Moore and I are going to sit down and try to figure out an appropriate carve out from the forfeiture with regard to a trust for the kids. He's got nine kids and no agreement's been reached about how we are going to do that or exactly what's going to be part of that. But in theory we have at least talked about that and I have expressed that to Mr. Davis. So I wanted to put that on the record.

**MR. MOORE:** We have discussed it. There is no agreement at this point. It is not an agreement. It's an agreement to discuss.

**THE COURT:** Well, there is an implication there that the Government would agree to some amount.

**MR. MOORE:** The Government is willing to agree to some amount so long as I made it clear to Mr. Rudolf, he has to get through the asset disclosure as does his wife, and they have to pass a polygraph and then we have these discussions.

(DAVIS plea transcript, pp. 19-20)

## D. GRAHAM's Plea

GRAHAM pled guilty to Counts 1 and 3 of the Seventh Superseding Indictment pursuant to a written plea agreement. Unlike DAVIS or GLOSTER, GRAHAM agreed to cooperate with the Government in an effort to earn a possible sentence reduction. GRAHAM's plea agreement (the standard cooperation agreement used in this district)

provided that he would tell the full and complete truth and he agreed to take and pass a polygraph test. GRAHAM further agreed that if he was not fully and completely truthful or did not pass the polygraph test to the Government's satisfaction, all of the Government's obligations would be null and void and the Government could argue for a maximum sentence. GRAHAM's agreement (attached as Exhibit C) included a 5K paragraph and a stipulation paragraph but did not include an 11(c)(1)(C) provision.

Paragraphs 9-11 of GRAHAM's agreement provide as follows:

9.     The Defendant agrees to be fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge. The Defendant must provide full, complete and truthful debriefings about these unlawful activities and must fully disclose and provide truthful information to the Government including any books, papers, or documents or any other items of evidentiary value to the investigation. The Defendant must also testify fully and truthfully before any grand juries and at any trials or other proceedings if called upon to do so by the Government, subject to prosecution for perjury for not testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any stage will, at the sole election of the Government, cause the obligations of the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that:

(1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above;

(2) all additional charges known to the Government may be filed in the appropriate district;

(3) the Government will argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and

(4) the Government will use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

10.     The Defendant agrees to submit to such polygraph examinations as may be requested by the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Government. Defendant further agrees that his refusal to take or his failure to pass any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Government within the Agreement becoming null and void.

11.     Provided the Defendant cooperates and complies with all the terms of this Agreement, the Government agrees that it will not attempt to directly use any self-incriminating information provided by the Defendant as a result of the cooperation required by the terms of this Agreement in any pending or future prosecution. The Defendant agrees that the Government may make derivative use of such information as it sees fit. The Defendant also understands that this agreement does not apply to restrict any such information:

(A) known to the Government prior to the date of this Agreement;

(B) concerning the existence of prior convictions and sentences;

(C) in a prosecution for perjury or giving a false statement; or

(D) in the event the Defendant breaches any of the terms of the Plea Agreement.

During his Rule 11 colloquy on March 27, the plea agreement was summarized and GRAHAM and his attorney indicated their assent to the entire agreement, including the provisions outlined above.

E. The Debriefings and Polygraph Examinations

On April 6, 2006, Defendant GLOSTER appeared for a debriefing with respect to her assets[2]. On April 7, 2006, Defendant DAVIS also appeared for the purpose of a debriefing with respect to assets.[3]

On April 11, 2006, Defendant GLOSTER appeared for the purpose of a polygraph exam. Defendant GLOSTER did not pass the polygraph examination, and thereafter made additional disclosures with respect to assets. Defendant GLOSTER was given another test, and her responses were again indicative of deception. It should be noted that despite her protestations of poverty, Defendant GLOSTER disclosed (on counsel's advice) that she had recently leased a Hummer luxury vehicle. [4]

Defendant DAVIS also took his polygraph test. DAVIS did not do any better on the test than his wife, as the examiner opined that DAVIS' responses were indicative of deception. Both DAVIS and GLOSTER were notified of their breach, and of the Government's intention to seek the maximum penalties.[5] In addition, counsel for both

---

[2]If the Court wishes to review this document, the United States would intends to file a copy of this debriefing as well as others referenced herein under seal in an effort to protect the privacy interests of individuals mentioned therein who have not been charged to date in connection with this ongoing investigation. The United States will await further direction from the Court ,as it is prepared to provide these documents immediately but has no desire to inundate the Court with copies of these interviews if the Court does not deem them helpful.

[3]Please see footnote 2 above.

[4]Please see footnote 2 above.

[5]In his letter to the Court dated October 19, 2006, DAVIS counsel states that "Mr. Davis was not willing to expose his family to possible retribution by cooperating against others." This

DAVIS and GLOSTER have been provided with all requested information concerning these polygraph tests and the United States understands that an expert has been retained by the defense to review these tests. The United States also has information indicating that at least GLOSTER has taken a private polygraph test. The United States has not been provided with the results of any privately-administered tests nor has it been notified of the defense' intention to call an expert witness in an attempt to challenge the polygraph test.

Defendant GRAHAM was interviewed pursuant to his plea agreement on May 9, 2006. . GRAHAM's counsel was present for this interview, and the undersigned was also present for a substantial portion of the interview. The information provided by GRAHAM was not consistent with information provided by other government witnesses; in addition, the interviewing agents believed that GRAHAM was deliberately minimizing at times, and at times providing false information about his drug dealing and crimes attendant thereto, including but not limited to money laundering.

On May 23. 2006, Defendant GRAHAM appeared for the purpose of taking a polygraph test. Two separate tests were administered to Defendant GRAHAM. The first test dealt with whether GRAHAM was withholding information and/or providing false

statement is not completely accurate. After DAVIS was notified that he was in breach, he offered to provide some information to the Government in an attempt to ameliorate his situation. However, the agents who interviewed DAVIS did not believe that DAVIS was not completely honest about his drug activity and related crimes. In addition, DAVIS sought to pick and choose against whom he would agree to cooperate, and he has refused to take a polygraph test to verify the accuracy of the information that he provided. The United States has no intention to engage in further negotiations with Defendant DAVIS as it believes him to be deceitful, manipulative and untrustworthy.

information with respect to an individual who has not been charged to date in connection with this investigation; the other test dealt with whether GRAHAM was withholding information or providing false information with respect to a potential drug-related homicide. GRAHAM did not pass the first test; with respect to the second test, no opinion could be rendered because of issues with the sequencing of the test questions. [6]

GRAHAM's counsel was provided with a copy of the examination and was informed that the Government considered him to be in material breach of his agreement. The Government offered GRAHAM a second chance at the polygraph with respect to the drug-related homicide out of a sense of fairness, and told his counsel that while a successful result on the proposed new polygraph test re: the murder would not cure his breach, the Government might be willing to negotiate further with him if he passed a polygraph test with respect to the homicide and "came clean" with respect to the uncharged individual. GRAHAM requested that he be offered a second test on the issue of the uncharged individual, and the Government declined because :(1) the first polygraph test was valid, and GRAHAM clearly did not pass it; and (2) two independent cooperating witness corroborate the results of the polygraph test. GRAHAM then refused to take a new polygraph examination with respect to the murder issue.

---

[6]Again, as noted in footnote 2, the United States if prepared to provide a copy of this report to the Court under seal if the Court deems it necessary and appropriate. The following quote from the report, however, is illustrative of Defendant GRAHAM's attitude and demeanor: "At one point during the questioning, the examinee laughed about the results. The examinee displayed an attitude of arrogance and indifference throughout the polygraph."

## II. LEGAL ARGUMENT

A. Plea Agreements and Breach Generally

The interpretation of a plea agreement is "guided by contract law, and parties to the agreement should receive the benefit of their bargain." United States v. McQueen, 108 F.3d 64, 66 (4th Cir.1997). A defendant who breaches a plea agreement has no right to look for its enforcement. See United States v. West, 2 F.3d 66, 69-70 (4th Cir. 1993); see also, United States v. Cox, 985 F.2d 427, 431 n.1 (8th Cir. 1993) (Defendant "cites us to ... no authority for the proposition that he as the breaching party may invoke this remedy [voiding plea agreement]"). In determining whether a party has breached his plea agreement, the Court assesses the reasonable expectations of the parties under an objective standard. *See* United States v. Scruggs, 356 F.3d 539, 544 (4th Cir. 2004), cert. denied, 541 U.S. 1079 (2004).

When the Government bargains for complete and truthful cooperation so that it can make decisions in the perspective of that information and the defendant subsequently fails to provide truthful and complete information, the Government has been deprived of the benefit of its bargain. Scruggs at 544. Id. Such a material breach of the plea agreement allows the Government to cancel its obligations under the agreement and also to retain any remedy for the breach enumerated in the agreement. Scruggs at 543. Also, where the Government can prove by a preponderance of the evidence that the defendant materially breached his commitment under the plea agreement, the Government is released from its obligations under the agreement. United States v. Davis, 393 F.3d 540, 546 (5th Cir. 2004)

See also <u>United States v. Smalls</u>, 134 Fed. Appx. 609 (4th Cir. June 14, 2005)(unpublished); <u>United States v. Holbrook</u>, 368 F. 3d 415 (4th Cir. 2004); <u>United States v. Cimino</u>, 381 F. 3d. 124 (2d. Cir. 2004); <u>United States v. Smith,</u> __ Fed. Appx_____2006 WL 18282117 (4th Cir. July 3, 2006)(unpublished);and <u>United States v. Mays</u>, 2006 WL 1956414 (4th Cir. July 13, 2006)(unpublished).

B. <u>The GLOSTER and DAVIS Plea Agreements are Plain and Unambiguous; Both Defendants are in Breach; and Neither Defendant should be allowed to Withdraw Their Pleas</u>.

The plea agreements for both DAVIS and GRAHAM are plain and unambiguous. As described above, the plea agreements require that these defendants pass a polygraph examination with respect to their assets *before* they are entitled to the agreed-upon sentence set out in Paragraph 5 of their respective agreements. Paragraph 5 of both agreements spells out that the defendants have to comply with all terms of the agreements in order for the Government to make the sentencing recommendation and in order for that recommendation to bind the Court (to either accept the recommendation or allow the defendant to withdraw a plea) under the terms of Rule . 11(C)(1)©. The last sentence of Paragraph 5 of both agreements expressly provides that "[I]f the Defendant does not comply with **all** the terms of this Agreement, the United States will seek the maximum sentence allowed by law and the Defendant will not be allowed to  withdraw (her/his) plea."

As described above, this agreement (and this understanding of the agreement was confirmed by both defendants during their Rule 11 colloquies before this Court.  In

addition, the appeal waiver sections of both agreements (Paragraph 11) indicates that all parties understood that that if there was no breach and the defendant obtained the benefits of the agreement, there would be no appeal–but if the defendant breached and was therefore sentenced to a term of incarceration exceeding the amount specified in Paragraph 5, the defendant retained the right to appeal.

The United States is not sure exactly what the defendants plan to argue on this issue, and is has not yet read their sentencing memoranda. However, Mr. Rudolf's October, 2006 letter appears to argue that his client believed that even if he breached by failing a polygraph on assets he would still get the agreed-upon sentence or he would be allowed to withdraw his plea. Mr. Rudolf's letter, of course, fails to reference Paragraph 5 of the plea agreement. This argument is belied by the plea agreement when read in its entirety, by the extensive-Rule 11 colloquy and by the negotiations leading up to the filing of the plea agreements. In addition, both defendants are intelligent and articulate and are represented by competent and experienced counsel.

The plea agreements are unambiguous and it is clear that both defendants are in breach. The government bargained for full, complete and truthful disclosure and forfeiture of the defendants' assets. It did not receive the full benefit of its bargain, and so there is a material breach of the agreement. *See* Scruggs, *supra*. Both defendants failed to pass a polygraph test, and the Government is prepared to present additional evidence

to support the conclusions of the polygraph examiner.[7] In addition, it clearly appears that Defendant GLOSTER has continued to spend money that she has obtained from some unknown source or from some undisclosed pot of drug money. Therefore, the government has determined, in good faith, that the defendants have not passed the polygraph examinations to its satisfaction.[8]

As the defendants are in breach, <u>Scruggs</u> holds that the government is free to exercise any of the remedies for the breach provided by the plea agreement. Therefore, the government intends to seek the maximum sentence as it is entitled to do under the plea agreements–specifically, Paragraph 5 of those agreements. Moreover, the defendants are not entitled to withdraw their pleas.

Based on conversations with counsel, the government expects DAVIS may argue that Paragraph 5 is inconsistent with the language of Rule 11(c)(1)© . The Government would respond that by signing the plea agreements and engaging in the Rule 11 colloquy

---

[7]The government will offer the testimony of DEA Special Agent Randy Smith (who retrieved cash from Defendant GLOSTER in an amount greater than the amount that she claimed she had on hand) among other evidence.

[8]The United States was previously asked by the United States Probation Office to consent to GLOSTER's travel from California (where she currently resides) to Charlotte for the purpose of taking a defense-arranged polygraph test. The United States has not been furnished with the results of this test, but assumes that if the results of the defense test were inconsistent with the Government's test, those results would have been provided to the government. If GLOSTER (and/or DAVIS) has taken and failed a defense test, the government fails to understand how their lawyers can quibble with or attack the results of the government's polygraph test.

as described above, DAVIS has waived any right to make this argument.[9] Moreover, such an anticipated argument has no merit.

Paragraph 5 is not inconsistent, in any way, with any logical reading of Paragraph 5. Also, Fourth Circuit precedent supports the government's reading and supports the government's use of plea agreements similar to the one at issue here. In <u>United States v. Bowman,</u> 348 F. 3d 408 (4th Cir. 2003) (a case from this district prosecuted by the undersigned) the Fourth Circuit dealt with a plea agreement similar too (but less tightly drafted) than the ones at issue here. In <u>Bowman</u>, the defendant decided to plea guilty two days into an anticipated week-long trial. Bowman agreed to cooperate, tell the truth, pass a polygraph and provide substantial assistance; in return, the Government agreed in Paragraph 11 of his Agreement (attached as Exhibit D) that if Bowman complied with all terms of the agreement, he would be entitled to an agreed-upon sentence of 22 years pursuant to the predecessor to Rule 11(c)(1)©.

Shortly after pleading guilty, Bowman changed his mind and refused to cooperate. Bowman then moved to withdraw his guilty plea, arguing that he had made false statements to the district court at his Rule 11 colloquy. The district court conducted a

---

[9]If a defendant can waive his right to remain silent and also waive his right to take a direct appeal of his sentence, he certainly can agree that he must meet certain conditions before he gains the benefits of a Rule 11(c)(1)© plea. *See generally* <u>United States v. Ruiz,</u> 536 U.S. 622 (2202); <u>United States v. Mezzanatto,</u> 513 U.S. 196 (1995); <u>United States v. Blick,</u> 409 F. 3d 162 (4th Cir. 2005); <u>United States v. Hahn,</u> 359 F. 3d 1315 (10th Cir. 2004)(en banc); <u>United States v. Bownes,</u> 405 F. 3d 634 (7th Cir. 2005); and <u>United States v. Joseftk,</u> 753 F. 2d 585 (1985.)

hearing, denied his motion, and sentenced him to a term of life imprisonment. The Fourth Circuit affirmed in a written opinion.

The United States entered into clear, valid agreements with both DAVIS and GLOSTER. The agreements were clear and unambiguous, and both defendants have materially breached their agreements. The United States is free to argue for the maximum sentence and the Court is free to pronounce a sentence that it deems appropriate under the Sentencing Guidelines and Title 18, United States Code, §3553(a).

C. Defendant GRAHAM has Materially Breached his Plea Agreement

As described above, Defendant GRAHAM has failed a polygraph examination concerning an individual who has not been charged in connection with this offense. Two government witnesses (Scott King and Eric Rivera) are prepared to provide evidence that contradicts the information furnished by Defendant GRAHAM about this individual's involvement in GRAHAM"S illegal activities. Moreover, the United States has evidence that GRAHAM has lied about other material matters and has breached his plea agreement by lying and withholding information with respect to various aspects of his illegal activities–and the Government will be prepared to prove this at sentencing.

In Defendant GRAHAM's case, the government bargained for full, complete and truthful information. Instead, it has received lies and false information. Pursuant to the Fourth Circuit's holding in Scruggs, the United States is allowed to use GRAHAM's statements made pursuant to the agreement, is not bound by stipulations in GRAHAM's favor, and the United States is free to argue for the maximum sentence in this case.

D. Guidelines Issues

1. Stipulations

The plea agreement contains certain stipulations. As all three plea agreements provide, stipulations in the defendant's favor do not bind the government if the defendant is in breach of the plea agreement. As noted above, all three defendants have breached their plea agreements by making materially false statements to government agents following their pleas and by failing  polygraph tests. With respect to Defendant GRAHAM, the Government is no longer bound with respect to its stipulation concerning his role in the offense, and the United States believes that he should receive a three-level increase in his offense level for his aggravated role in the offenses to which he pled guilty. The United States will be prepared to offer evidence on this issue through the testimony of Scott King and Eric Rivera, among others.

Making a materially false statement to a government agent is a criminal offense prosecuteable under Title 18, United States Code, §1001. In addition, the United States is currently investigating whether Mr. DAVIS has committed other crimes following the entry of his guilty plea. Therefore, the United States does not believe that any of these defendants can show that they deserve a reduction for acceptance of responsibility. *See* United States v. May, 359 F. 3d 683 (4th Cir. 2004); and United States v. Walker, 112 F. 3d 163 (4th Cir. 1997).

2. The Murder Cross-Reference

The United States has evidence that Defendants GRAHAM and DAVIS planned the murder of one of their co-conspirators in order to prevent him happened providing testimony against Defendant GRAHAM. At least one witness (the United States is in the process of gathering other evidence) will testify that he has direct knowledge of both defendant's involvement in this plot. The co-conspirator (who was one of the original defendants charged in this case before GRAHAM and DAVIS were also added as defendants) and an innocent third party were brutally murdered in Atlanta on September 5, 2004. As the Court is aware, this murder happened some 6 months after GRAHAM's initial arrest and two months before GRAHAM cut his ankle monitor and fled to California in contravention of this Court's orders.

The United States believes that it can prove, by a preponderance of the evidence, that both defendants should be sentenced pursuant to the murder cross-reference provided for by USSG § 2D1.1(d)(1*). See* <u>United States v. Scheetz</u>, 293 F. 3d 175 (4th Cir. 2002); and <u>United States v. Mays</u>, 2006 WL 1956414, *supra*. (4th Cir. July 13, 2006)(unpublished). The United States also believes that DAVIS prior acts of violence are relevant on the issues of motive and intent with respect to that murder, and believes that the United States Probation Office (USPO) should investigate this issue and revise the DAVIS and GRAHAM presentence reports accordingly. Both DAVIS and GRAHAM deserve a life sentence without the possibility of parole for their various crimes. The

United States will be prepared to support its positions at sentencing, and would intend to

provide all evidence concerning the positions advocated herein to the USPO immediately.


Respectfully submitted

REGINALD I. LLOYD
UNITED STATES ATTORNEY


BY:    s/ Mark C. Moore
       MARK C. MOORE
       Assistant United States Attorney


Columbia, South Carolina
November 9, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | CRIMINAL NO. 6:03-1092 |
| | ) | |
| vs. | ) | |
| | ) | |
| TREMAYNE GRAHAM | ) | |
| JERRY DAVIS | ) | |
| TIFFANY GLOSTER | ) | |

CERTIFICATE OF SERVICE

I hereby certify that I am an employee in the Office of the United States Attorney for the District of South Carolina, and on November 9, 2006, I cause to be served one true and correct copy of the Government's Sentencing Memorandum in the above-captioned case, via facsimile and regular mail, on the following person(s):

Jack B. Swerling, Esquire
1720 Main Street, Suite 301
Columbia, South Carolina 29201

Jessica Salvini, Esquire
101 W. Park Avenue
Greenville, South Carolina 29601

C. Rauch Wise, Esquire
305 Main Street
Greenwood, South Carolina 29646

s/ Alesia Gregory-Smith
Legal Assistant