UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | CRIMINAL NO. 6:03-1092 |
| | ) | |
| vs. | ) | |
| | ) | |
| TREMAYNE GRAHAM | ) | |
| JERRY DAVIS | ) | |
| TIFFANY GLOSTER | ) | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

**I. INTRODUCTION**

Sentencing in this case is set for April 17, 2007. The United States files this supplemental sentencing memorandum to: (1) update the Court with respect to recent developments and discuss how those developments may impact the sentencings of these three defendants.; and (2) respond to the arguments made by the defendant Graham in his filings. . As described fully in the sentencing memorandum filed earlier with the Court, all three (3) defendants have materially breached their several plea agreements with the Government. The Government has negotiated compromise resolutions with respect to Defendants GLOSTER and DAVIS; the compromise will result in both defendants admitting that they are in breach of their plea agreements. If these compromise resolutions are accepted by the Court, these resolutions will result in a 24 month jail

sentence for GLOSTER and a 40 year jail sentence for DAVIS.[1] Both defendants will withdraw their objections to the preliminary orders of forfeiture (POF) and the amended PSR's.

The United States' various efforts to reach a resolution with Defendant GRAHAM have been unsuccessful and the Government will be seeking a life sentences with respect to Defendants GRAHAM as the evidence demonstrates that he: (1) has materially breached his plea agreement in multiple aspects; (2) is a **major** drug dealer who has failed to show any remorse and meaningfully accept responsibility for his crimes; and (3) conspired to murder a potential cooperating witness.

The Court has presided over a number of proceedings in this very complex case and is well-aware that Defendants GRAHAM and DAVIS are major drug dealers who have distributed well over one thousand kilograms of cocaine throughout the United States. Therefore, the United States will concentrate on the facts relevant to the issues relevant to sentencing–including but not limited to GRAHAM's multiple breaches of his plea agreement.

All three of the defendants referenced above filed numerous pretrial motions, including motions to suppress various pieces of evidence. The parties briefed those issues, and this Court conducted extensive suppression hearings on February 21 and

---

[1] The United States offered GRAHAM a compromise proposal that would have resulted in a recommendation of 35-year sentence (5 years less than DAVIS). As he has done throughout this case, GRAHAM refused the Government's offer to arrive at a fair compromise.

22 , 2006. After the Court denied the defendants' suppression motions, all three of the defendants began to explore plea negotiations.

Ms. GLOSTER was the first defendant to enter a plea, and she did so on March 6, 2006. A jury was selected the following day (March 7, 2006) for the remaining two defendants, with the trial scheduled to begin in early April. Both GRAHAM and DAVIS entered guilty pleas the week before the trial was to commence, with GRAHAM entering a plea on March 27 and DAVIS entering his plea the following day (March 28, 2006).

**II. TREMAYNE GRAHAM**

A. Factual Background

GRAHAM pled guilty to Counts 1 and 3 of the Seventh Superseding Indictment pursuant to a written plea agreement. Unlike DAVIS or GLOSTER, GRAHAM agreed to cooperate with the Government in an effort to earn a possible sentence reduction. GRAHAM's plea agreement (the standard cooperation agreement used in this district) provided that he would tell the full and complete truth and he agreed to take and pass a polygraph test. GRAHAM further agreed that if he was not fully and completely truthful or did not pass the polygraph test to the Government's satisfaction, all of the Government's obligations would be null and void and the Government could argue for a maximum sentence. GRAHAM's agreement included a 5K paragraph and a stipulation paragraph but did not include an 11(c)(1)c provision.

Paragraphs 9-11 of GRAHAM's agreement provide as follows:

9. The Defendant agrees to be fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge. The Defendant must provide full, complete and truthful debriefings about these unlawful activities and must fully disclose and provide truthful information to the Government including any books, papers, or documents or any other items of evidentiary value to the investigation. The Defendant must also testify fully and truthfully before any grand juries and at any trials or other proceedings if called upon to do so by the Government, subject to prosecution for perjury for not testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any stage will, at the sole election of the Government, cause the obligations of the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that:

> (1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above;
>
> (2) all additional charges known to the Government may be filed in the appropriate district;
>
> (3) the Government will argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and
>
> (4) the Government will use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

10. The Defendant agrees to submit to such polygraph examinations as may be requested by the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Government. Defendant further agrees that his refusal to take or his failure to pass any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Government within the Agreement becoming null and void.

11. Provided the Defendant cooperates and complies with all the terms of this Agreement, the Government agrees that it will not attempt to directly use any self-incriminating information provided by the Defendant as a result of the cooperation required by the terms of this Agreement in any pending or future prosecution. The Defendant agrees that the Government may

make derivative use of such information as it sees fit. The Defendant also understands that this agreement does not apply to restrict any such information:

>  (A) known to the Government prior to the date of this Agreement;
> 
>  (B) concerning the existence of prior convictions and sentences;
> 
>  (C) in a prosecution for perjury or giving a false statement; or
> 
>  (D) in the event the Defendant breaches any of the terms of the Plea Agreement.

During his Rule 11 colloquy on March 27, the plea agreement was summarized and GRAHAM and his attorney indicated their assent to the entire agreement, including the provisions outlined above.

Defendant GRAHAM was interviewed pursuant to his plea agreement on May 9, 2006. GRAHAM's counsel was present for this interview, and the undersigned was also present for a substantial portion of the interview. The information provided by GRAHAM was not consistent with information provided by other government witnesses; in addition, the interviewing agents believed that GRAHAM was deliberately minimizing at times, and at times providing false information about his drug dealing and crimes attendant thereto, including but not limited to money laundering. Agents have developed information that GRAHAM deliberately lied with respect to a number of material, relevant facts. The United States will present testimony that shows that GRAHAM has refused to provide full, complete and truthful

5

information with no less than three persons involved in his illegal drug trafficking and money laundering activities. The evidence will show that he withheld information with respect to the first individual because of his close relationship with that person; he has withheld information or provided false information about two other individuals because he knows that both of them could directly implicate him in the murder of a potential witness–and that witness' girlfriend.

On May 23. 2006, Defendant GRAHAM appeared for the purpose of taking a polygraph test. Two separate tests were administered to Defendant GRAHAM. The first test dealt with whether GRAHAM was withholding information and/or providing false information with respect to an individual who has not been charged to date in connection with this investigation; the other test dealt with whether GRAHAM was withholding information or providing false information with respect to a potential drug-related homicide. GRAHAM did not pass the first test; with respect to the second test, no opinion could be rendered because of issues with the sequencing of the test questions. [2] It should be noted that GRAHAM's counsel was at the United States Attorney's Office both before and after the test, and counsel personally spoke to the polygraph examiner. At no time that day did either GRAHAM or his counsel suggest

---

[2] Again, as noted in footnote 2, the United States is prepared to provide a copy of this report to the Court under seal if the Court deems it necessary and appropriate. The following quote from the report, however, is illustrative of Defendant GRAHAM's attitude and demeanor: "At one point during the questioning, the examinee laughed about the results. The examinee displayed an attitude of arrogance and indifference throughout the polygraph."

6

that GRAHAM was hungry or not feeling well, and the United States first heard about these allegations after it notified GRAHAM of his breach and its intentions in this regard–in fact, the United States learned of this when it read GRAHAM's sentencing memorandum.

GRAHAM's counsel was provided with a copy of the examination and was informed that the Government considered him to be in material breach of his agreement. The Government offered GRAHAM a second chance at the polygraph with respect to the drug-related homicide out of a sense of fairness, and told his counsel that while a successful result on the proposed new polygraph test re: the murder would not cure his breach, the Government might be willing to negotiate further with him if he passed a polygraph test with respect to the homicide and "came clean" with respect to the uncharged individual. GRAHAM requested that he be offered a second test on the issue of the uncharged individual, and the Government initially declined because :(1) the first polygraph test was valid, and GRAHAM clearly did not pass it; and (2) two independent cooperating witness corroborate the results of the polygraph test. GRAHAM then refused to take a new polygraph examination with respect to the murder issue.

After it filed its initial sentencing memorandum, the United States reached out to GRAHAM and offered him a chance to retake both polygraph tests as he originally requested. GRAHAM's counsel took some time to respond to the Government's overture and GRAHAM ultimately imposed certain conditions before he would

7

indicate an acceptance of the Government's offer. The United States then exercised its options under the plea agreement to demand that GRAHAM take additional tests–and GRAHAM refused.

B. GRAHAM's Material Breaches

1. Providing False Information

The United States is prepared to call both Scott King and Eric Rivera as witnesses in this case. Both of these defendants have pled guilty and have complied with the terms and conditions of their plea agreements.

Both of these cooperating witnesses will provide information about a close associate of GRAHAM's who was significantly involved in the GRAHAM's drug business. This uncharged associate (Associate Number One) of GRAHAM's helped move drugs and money back and forth between California and Atlanta at the request of Graham. Graham, however, failed to name this person in his debriefings. Graham's motive for withholding information about Associate Number One is simple; as Graham told Scott King that this associate supplied the gun used to murder Ulysses Hackett and his girlfriend.

As the Court may recall, Ulysses Hackett was a courier for GRAHAM and King and was among the original defendants charged in this case. After GRAHAM was added as a defendant, Hackett and his girlfriend were brutally murdered in Atlanta several months before GRAHAM's scheduled 2004 trial. Of course, that trial did not take place–as GRAHAM skipped bond and fled to California. King will testify

that GRAHAM was very concerned that Hackett would cooperate and testify against him, and that GRAHAM had a number of conversations with King about the need to have Hackett murdered. GRAHAM ultimately made statements to King indicating that he arranged for this murder through Jerry Davis.

Davis has a number of violent associates. One of these associates (Associate Number two) is currently charged with drug and weapons offenses in federal courts in both Jacksonville and New Jersey. According to King, he and Graham were witnesses to a double homicide in Washington, DC committed by Associate Number Two. GRAHAM, however, denies that he was present at this scene. His motive for lying about this becomes apparent when juxtaposed against the fact that an eyewitness has picked Associate Number Two out of a lineup leaving the vicinity of the apartment where Hackett was murdered on the night of that crime.

GRAHAM has also withheld information about a third individual who will be referred to as Associate Number Three. GRAHAM has flunked a polygraph with respect to his statements concerning Associate Number Three, and both King and Rivera will provide evidence that shows that GRAHAM has also lied about this person's involvement in his drug business.

2. The Failed Polygraph Test

As noted above, GRAHAM has not only lied–he has failed a polygraph examination. The Government will be prepared to prove this breach through the testimony of the polygraph examiner if the Court deems it necessary. The United

States would note that GRAHAM recently furnished it with notice of its intention to rely on expert testimony with respect to this polygraph examination. The United States understands that an examiner retained by the defense has scored the test concerning GRAHAM's dealings with Associate Number Three as a "minus three" and that this defense witness believes that these results were "inconclusive".  Of course, an examinee who scores out as "inconclusive " has certainly not "passed" a polygraph, so this proposed "expert" testimony does not assist GRAHAM. Moreover, GRAHAM agreed to pass a test to the Government's (not the defenses') satisfaction; in addition, the Government will be prepared to demonstrate (if necessary) trough the testimony of its own expert witness that a score of "minus three" necessary yields to a determination that an examinee has failed an examination because his answers were clearly deceptive, and not simply inconclusive.

3. GRAHAM's Refusal To Take Additional Polygraph Tests

After he was told that he one of the first two polygraph examinations, GRAHAM asked for an opportunity to take these tests again. When the United States ultimately agreed to his request, GRAHAM changed tack and refused to take additional tests. When the Government then demanded that he take additional tests as required under the terms of Paragraph 10 of his agreement, GRAHAM also refused. GRAHAM's refusal constitutes an independent, material breach of his agreement.

C. The Consequences for Breach

As described above, Defendant GRAHAM has failed a polygraph examination concerning an individual who has not been charged in connection with this offense. Two government witnesses (Scott King and Eric Rivera) are prepared to provide evidence that contradicts the information furnished by Defendant GRAHAM in numerous relevant particulars, and the Government intends to offer testimony corroborating King and Rivera through a Government agent.

The interpretation of a plea agreement is "guided by contract law, and parties to the agreement should receive the benefit of their bargain." United States v. McQueen, 108 F.3d 64, 66 (4th Cir.1997). A defendant who breaches a plea agreement has no right to look for its enforcement. See United States v. West, 2 F.3d 66, 69-70 (4th Cir. 1993); see also, United States v. Cox, 985 F.2d 427, 431 n.1 (8th Cir. 1993) (Defendant "cites us to ... no authority for the proposition that he as the breaching party may

invoke this remedy [voiding plea agreement]"). In determining whether a party has breached his plea agreement, the Court assesses the reasonable expectations of the parties under an objective standard. *See* United States v. Scruggs, 356 F.3d 539, 544 (4th Cir. 2004), cert. denied, 541 U.S. 1079 (2004).

When the Government bargains for complete and truthful cooperation so that it can make decisions in the perspective of that information and the defendant subsequently fails to provide truthful and complete information, the Government has been deprived of the benefit of its bargain. Scruggs at 544. Id. Such a material breach of the plea agreement allows the Government to cancel its obligations under the agreement and also to retain any remedy for the breach enumerated in the agreement. Scruggs at 543. Also, where the Government can prove by a preponderance of the evidence that the defendant materially breached his commitment under the plea agreement, the Government is released from its obligations under the agreement. United States v. Davis, 393 F.3d 540, 546 (5th Cir. 2004) See also United States v. Smalls, 134 Fed. Appx. 609 (4th Cir. June 14, 2005)(unpublished); United States v. Holbrook, 368 F. 3d 415 (4th Cir. 2004); United States v. Cimino, 381 F. 3d. 124 (2d. Cir. 2004); United States v. Smith, __ Fed. Appx_____2006 WL 18282117 (4th Cir. July 3, 2006)(unpublished);and United States v. Mays, 2006 WL 1956414 (4th Cir. July 13, 2006)(unpublished).

In Defendant GRAHAM's case, the government bargained for full, complete and truthful information. Instead, it has received lies and false information. Pursuant

12

to the Fourth Circuit's holding in Scruggs, the United States is allowed to use GRAHAM's statements made pursuant to the agreement, is not bound by stipulations in GRAHAM's favor, and the United States is free to argue for the maximum sentence in this case.

GRAHAM's plea agreement contains certain stipulations. The plea agreement provides, however, that stipulations in the defendant's favor do not bind the government if the defendant is in breach of the plea agreement. As noted above, GRAHAM has breached the plea agreement by making materially false statements to government agents following his plea and by failing polygraph tests. With respect to Defendant GRAHAM, the Government is no longer bound with respect to its stipulation concerning his role in the offense, and the United States believes that he should receive at least a three-level increase in his offense level for his aggravated role in the offenses to which he pled guilty. The United States will be prepared to offer evidence on this issue through the testimony of Scott King and Eric Rivera, among others.

Making a materially false statement to a government agent is a criminal offense prosecuteable under Title 18, United States Code, §1001. Therefore, the United States does not believe that GRAHAM can demonstrate that he deserves any reduction for acceptance of responsibility. *See* United States v. May, 359 F. 3d 683 (4th Cir. 2004); and United States v. Walker, 112 F. 3d 163 (4th Cir. 1997).

The United States has evidence that Defendant GRAHAM planned the murder of Ulysses Hackett, one of his co-conspirators, in order to prevent Hackett from providing testimony against Defendant GRAHAM..

The United States believes that it can prove, by a preponderance of the evidence, that GRAHAM should be sentenced pursuant to the murder cross-reference provided for by USSG § 2D1.1(d)(1). *See* United States v. Scheetz, 293 F. 3d 175 (4th Cir. 2002); and United States v. Mays, 2006 WL 1956414, *supra*. (4th Cir. July 13, 2006)(unpublished).

Given the above, GRAHAM fully deserves a life sentence without the possibility of parole for his their various crimes. The United States will be prepared to support the positions outlined above at next week's sentencing.

        REGINALD I. LLOYD
        UNITED STATES ATTORNEY


        By    s/Mark C. Moore
        MARK C. MOORE
        Assistant United States Attorney

April 13, 2007