IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

2009 MAY 29 A 10: 28

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | |
| -versus- ) | 6:03-1092 |
| ) | |
| ) | MAY 1, 2009 |
| TREMAYNE KIARR GRAHAM, ) | |
| ) | GREENVILLE, SC |
| ) | |
| Movant. ) | |

MOVANT'S PRO SE MEMORANDUM OF FACTS
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

COMES NOW, TREMAYNE GRAHAM, the Movant pro se in the above-styled 2255 action, and would respectfully submit this Memorandum of Facts and Law in Support of movant's Motion to Vacate under 2255 which is herewith attached and incorporated by reference.[1]

### I. STATEMENT OF CASE

* June 16, 2005 - Tremayne was arrested exiting a Subway sandwitch shop at the intersection of Sherman Way and Woodley in Van Nuys, CA at noon.

* Trial date set for April 4, 2006.

* March 24, 2006 - Plea offered for 27yrs. (with no cooperation) to Tremayne Graham and Jerry Davis. The offer was presented to Graham and Davis in a joint attorneys meeting (Jessica Salvini/Bradley Bennett representing Graham and David Rudolf/Christopher Fialco representing Davis) in the library at Spartanburg County Detention Center. Graham requested more time to consider the plea and a deadline of March 26, 2006 at 2pm was extended to Graham via telephone by Mark Moore (AUSA).

* March 25, 2006 - Graham was informed of a second offer that included cooperation that would reduce Graham's sentence under a 5k.1 provision. This offer was also made by Mark Moore.

---

[1] Movant would invoke liberal construction standard as enunciated by the Supreme Court in Haines v. Kerner, 404 U.S. 519 (1972)

* March 27, 2006 - Graham entered a guilty plea. After the plea hearing, Graham met with Agents to prep for Davis's trial on April 4. Graham was scheduled to meet with the Agents on March 28, 2006 to wrap-up the trial prep but the meeting was canceled when Davis plead guilty that day after being informed that Graham had plead guilty and was cooperating and would testify against him if he(Davis) went to trial.
* 3 - 4 weeks later Graham met with DEA and IRS agents to be debriefed. Graham provided 18 pages of discovery.
* 3 - 4 weeks after the debriefing, Graham was polygraphed. Graham was given two exams: The first exam asked questions about a double homicide which Graham was informed by the examiner that he passed; the second asked questions about Graham's ex-wife's involvement or knowknowledge of his illegal activities. The test asked Graham was he gonna be truthful and he passed that question three times. Did he tell his wife that he had drug money and Graham passed that question three times. Last, Graham was asked did he tell his wife that the money he gave her was drug money and Graham (allegedly) passed the question once and failed the question twice which constituted a failed exam.
* Because the examiner was unsure about the results, Graham was informed by the examiner that the results would be sent to DEA headquarters in Washington DC to determine the results.
* One week later, Graham met with John Briggs of the US Marshals to provide information about Scott King's (a fugitive on Graham's) case) whereabouts. Graham provided the marshals with the Driver's license/alias that King was driving, a possible residence, places that King frequented and a person that King was in constant contact with.
* Two weeks later King was captured.
* King was informed that Graham was cooperating against him and was provided with the 18 page statement that Graham gave the Agents. Consequently, King agreed to cooperate with his main focus on getting the person that got him caught (Graham).
* Two months later Richard Garrett was arrested and provided with Graham's 18 page statement.

\* Four months later, Graham was informed that the results of the polygaph test was that he failed the test about his ex-wife and the test about the double homicide that the examiner initially told Graham that ge had passed was deemed inconclusive because of a sequencing problem.

\* Graham was asked to retake the test. Graham refused because he felt he passed the test the first time. Also Graham was leary because it doesn't take six months to determine the results of a polygraph exam. Graham felt that he was being set-up to fail, so he declined and decided to leave the matter in the Judge's hands.

## II. FACTS

\* The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendent. Alford, 400 U.S. at 31. In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, Brady v. United States, 397 U.S. 742, 749, 25 L. Ed. 747, 90 S. Ct. 1463 (1970), granting the defendant's solemn declaration of guilt a presumption of truthfulness. Henderson v. Morgan, 426 U.S. 637, 648, 49 L. Ed. 2d 108, 96 S. Ct. 2253(1976) (plurality opinion). The Constitution requires the circumstances to reflect that the defendant was informed of all of the direct consequences of his plea. Brady, 397 U.S. at 755. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. Henderson, 426 U.S. at 645 n. 13.

\* A plea agreement is breached when a government promise that induced the plea goes unfulfilled. United States v. Ringling, 988 F 2d 504 (4th Cir. 1993). The government is bound only to promises actually made to the defendant. United States v. Peglera, 33 F. 3d 412, 413 (4th Cir. 1994). A plea agreement is construed in accordance with principles of contract law so that each party receives the benefit of the bargain; however, because a plea agreement implicates a defendant's fundamental and constitutional rights, the agreement is analyzed with more scrutiny than a commercial contract. United States v. Holbrook, 368 F. 3d 415, 420 (4th Cir. 2004)

\* Judicial scrutiny of counsel's performance must be highly deferential...A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluat the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy.

\* If a Gov't representative orally promised the Defendant that he could conditionally plead, the Defendant "would be entitled to the relief he's asking for" despit his attorney's failure to preserve this right in the written plea agreement.

## A. CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS

Supporting Facts:

    Movant contends that counsel was ineffective during plea negotiations in many ways. Counsel led Movant to believe that the most time he would receive if he plead before the 2pm deadline on March 26, 2006. If Movant was aware that there was a possibility of receiving a LIFE sentence from taking the cooperation plea, then the 27year plea with no cooperation would have been an obvious choice. The sole purpose of the Movant accepting a plea was to "not" receive a LIFE sentence.
    Movant was urged to accept the second plea because as his attorneys stated "he had nothing to lose". Movant did not scrutinize the plea agreement because when it was shown to him by his attorneys, the level 40 was pointed out which was consistant with the 27 yrs. agreed upon for pleading before the 2pm on March 26, 2006. Therefore, Movant answered in the affirmative to all the questions asked by the judge as advised by his attorneys. Movant instantly objected to the gun enhancement but was told not to worry about it from his attorneys because Movant had a solid deal with the government. Several issues would have been addressed otherwise. For instance, the gun

enhancement as well as the leadership enhancement. Also, the plea agreement (please read) is extremely one-sided. Movant didn't have any of his charges dropped or reduced to a lesser charge, yet Movant agreed to sign a plea whereas he gave up all of his rights including the right to withdraw the guilty plea. Movant acted on the ineffective assistance of his counsel that led him to believe that he could conditionally plea to a maximum of 27 years.

### III. CONCLUSION

The fact of the matter is that Graham plead under the pretense that the most time he was facing was 27 years because he agreed to plea before the 2pm deadline on March 26, 2006 given by Mark Moore (AUSA). Under no circumstances whould Graham have accepted the cooperation plea if he had known that he would be held to standards inconsistent with the standards affored to other defendants on the case. Movant would not have accepted the cooperation plea if not for the ineffective advice and assistance of his counsel. It was Movant's logical understanding that his cooperation would lead to his sentence of 27 years being reduced instead of being enhanced to a LIFE sentence. Counsel was ineffective in not explaining the "cons" of the cooperation plea instead of leading the Movant to believe that he had noting to lose from taking the cooperation plea and everything to gain.

### IV. RELIEF

Wherefore due to the above, and for any other reason(s) which may appear to the court, the Movant Tremayne Graham, pro se, respectfully requests that the court appoint counsel and have this motion placed on the calendar, in order that the ends of justice be met.

Respectfully submitted,

_____
TREMAYNE K. GRAHAM, pro se