IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | Cr. No. 6:03-1092-HMH |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Tremayne Kiarr Graham, | ) | |
| | ) | |
| Movant. | ) | |

This matter is before the court on Tremayne Kiarr Graham's ("Graham") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. After a thorough review of the facts and pertinent law, the court summarily dismisses Graham's § 2255 motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2006, Graham pled guilty pursuant to a plea agreement to one count of conspiracy to distribute 5 grams or more of cocaine and 50 grams or more of cocaine base, one count of possession with the intent to distribute 5 kilograms or more of cocaine, one count of money laundering, one count of aiding and abetting the maintaining of a stash house, and one count of failing to appear for court after having been released on bond. The plea agreement stated in pertinent part that

> [p]rovided the Defendant cooperates pursuant to the provisions of this Plea Agreement, and that cooperation is deemed by the Government as providing substantial assistance in the investigation or prosecution of another person who has committed an offense, the Government agrees to move the Court for a downward departure or reduction of sentence pursuant to United States Sentencing Guidelines [("U.S.S.G.")] § 5K1.1, Title 18, United States Code, § 3553(e) or Federal Rule of Criminal Procedure 35(b). The Defendant further understands that any such motion by the Government is not binding upon the Court, and should the Court sentence the Defendant within the Guidelines, to the maximum penalty prescribed by law or refuse to reduce the sentence imposed, the Defendant will have no right to withdraw his plea.

(Plea Agreement ¶ 12.) In addition, the plea agreement listed a number of stipulations, including the stipulation that Graham's total offense level should be 40.[1] However, these stipulations were not binding on the court and Graham had no right to withdraw his guilty plea if the stipulations were not accepted by the court. Further, the plea agreement required that Graham submit to a polygraph examination if requested by the Government. (Id. ¶ 10.) Moreover, the plea agreement provided the following:

> The Defendant agrees to be fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge. The Defendant must provide full, complete and truthful debriefings about these unlawful activities and must fully disclose and provide truthful information to the Government including any books, papers, or documents or any other items of evidentiary value to the investigation. The Defendant must also testify fully and truthfully before any grand juries and at any trials or other proceedings if called upon to do so by the Government, subject to prosecution for perjury for not testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any state will, at the sole election of the Government, cause the obligations of the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that:
> (1)   the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above;
> (2)   all additional charges known to the Government may be filed in the appropriate district;
> (3)   the Government will argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and
> (4)   the Government will use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

---

[1] Depending on a defendant's criminal history category, a total offense level of 40 renders an advisory sentencing guideline range of 292 months' imprisonment to life imprisonment under the U.S.S.G.

2

(Id. ¶ 9.) On April 17, 2007, the court found that the Government had proven by "clear and convincing evidence" that Graham had breached the plea agreement because he failed a properly administered polygraph test and failed "to make full and complete disclosure as to his drug activities" as required by the plea agreement. (Sentencing Tr. 318-19.) After finding that Graham had breached the plea agreement, the court sentenced Graham to life imprisonment. Graham appealed his conviction and sentence. On May 6, 2008, the United States Court of Appeals for the Fourth Circuit affirmed Graham's conviction and sentence and dismissed Graham's claims that were barred by the appellate waiver in the plea agreement. United States v. Graham, No. 07-4441, 2008 WL 1960874, at *2 (4th Cir. May 6, 2008) (unpublished). Graham filed the instant § 2255 motion on May 6, 2009.[2] In his § 2255 motion, Graham alleges that his counsel was constitutionally ineffective during plea negotiations.

## II. Discussion of the Law

### A. Ineffective Assistance of Counsel Claims

In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Graham must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. With respect to the second prong, Graham must

---

[2]. See Houston v. Lack, 487 U.S. 266 (1988).

3

demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Graham's claim that his counsel was ineffective during plea negotiations is wholly without merit. A defendant can challenge the voluntary and intelligent character of the guilty plea by demonstrating that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). "Erroneous advice during the plea negotiation process or the failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." United States v. Brannon, No. 02-6800, 2002 WL 31236437, at *2 (4th Cir. Oct. 7, 2002) (unpublished). Graham alleges that prior to entering his guilty plea he was offered a Rule 11(c) of the Federal Rules of Criminal Procedure plea to 27 years' imprisonment without cooperation. However, Graham argues that his counsel urged him to take the cooperation plea because he had "nothing to lose." (Graham's Mem. Supp. § 2255 Mot. 4.) The cooperation plea provided the possibility that if Graham provided substantial assistance, he might receive a downward departure on his sentence pursuant to Rule 5K1.1 of the U.S.S.G. or Rule 35(b) of the Federal Rules of Criminal Procedure. (Plea Agreement ¶ 12.) Graham alleges that he was unaware that he could be sentenced to life imprisonment. Graham states "[i]t was Movant's logical understanding that his cooperation would lead to his sentence of 27 years being reduced instead of being enhanced to a LIFE sentence. Counsel was ineffective in not explaining the 'cons' of the cooperation plea instead of leading the Movant to believe that he had noting [sic] to lose from taking the cooperation plea . . . ." (Graham's Mem. Supp. § 2255 Mot. 5.)

Graham's testimony during his guilty plea hearing undermines his claim.  During the guilty plea colloquy, under oath, Graham stated that he had enough time to discuss his case with counsel and that he was satisfied with her representation.  (Guilty Plea Tr. 4.)  In addition, Graham stated that no one forced, threatened, or coerced him to plead guilty and that no one, including his counsel, had promised him what his actual sentence would be.  (Id. 10.)  Moreover, Graham stated that he had no complaints of his attorney or anyone else in connection with his case.  (Id. 4.)

The court informed Graham of the charges against him, the elements of each offense, and the statutory sentencing provisions for each charge.  (Id. 4-10.)  Graham stated that he understood what he was charged with, the elements of each charge, and what the statutory sentencing provisions could be and understanding that, he still wished to plead guilty.  (Id. 11.)  In addition, Graham testified that he had thoroughly reviewed the plea agreement with his counsel and understood each and every provision.  (Guilty Plea Tr. 13-14.)  Further, the Government summarized the plea agreement, including the provisions that Graham had to be "fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge" and submit to a polygraph examination, if requested.  (Id. 19-20, 16.) Further, the Government stated that the "failure to pass any such polygraph examination to the Government's satisfaction will result at the Government's sole discretion in the obligations of the attorneys of the Government within this agreement become null and void."  (Id. 16-17, 19-20.)  The Government outlined the stipulations contained in the agreement which would result in a total offense level of 40 under the U.S.S.G.  The Government noted that "Defendant understands these stipulations are not binding

5

on the Court . . . and that he has no right to withdraw his plea should the stipulations not be accepted" and that the stipulations were binding on the Government only if Graham complied with the plea agreement. (Id. 18.) Most importantly, the Government stated that Graham "understands that sentencing is the sole discretion of the Court and that . . . anyone who has given him an idea of what his sentence might be or a probable sentencing range, it is only a prediction not a promise and is not binding on the Government, the Probation Office or the Court." (Id. 19.) Further, the Government stated that it would file a motion for a downward departure provided that Graham complied with the plea agreement and that his cooperation is deemed as providing substantial assistance. (Id. 21.) At the conclusion of the Government's summary of the plea agreement, the court asked Graham if the summary was part of the agreement and Graham answered, "Yes, sir." (Guilty Plea Tr. 23.) Further, the court again asked whether the Government had promised Graham "anything else" that was not contained in the plea agreement and Graham answered, "No, sir." (Id. 24.)

There is no evidence that Graham was promised that he would be sentenced to, at the most, 27 years' imprisonment. To the contrary, at his guilty plea hearing, Graham testified that no one had promised him what his sentence would be. Further, he was informed during the guilty plea hearing that any prediction as to what his sentence might be was not a promise as to what his actual sentence would be. In addition, the Government agreed to file a motion for downward departure pursuant to Rule 5K1.1 or Rule 35(b) only if Graham complied with the plea agreement and provided substantial assistance. Graham was informed that if he did not comply with his plea agreement that the Government's obligations under the agreement were null and void. On appeal the Fourth Circuit held that "[a]s the Government amply demonstrated at

sentencing, Graham made false, incomplete, and misleading statements to federal agents, thereby breaching the plea agreement. Because of Graham's violations, the Government was not bound to its obligations under the plea agreement and could seek a greater sentence without breaching the agreement." Graham, 2008 WL 1960874, at *1.

Graham understood that he had to be truthful to the Government to obtain the benefits of the plea agreement. See United States v. Kennedy, Cr. No. 6:05-815-HMH, 2007 WL 1574955, at *2 (D.S.C. May 30, 2007) (unpublished) (finding that counsel was not ineffective where plea agreement "unambiguously" put defendant "on notice that if requested by the Government, he would have to testify against his sister and that his failure to testify truthfully would void the plea agreement"). Graham failed to be truthful and lost the benefit of his plea agreement based on his own actions. There is no evidence that Graham's counsel provided any objectively unreasonable advice to him. The court finds that Graham voluntarily and intelligently pled guilty. Based on the foregoing, Graham fails to show that his counsel acted in an objectively unreasonable manner during plea negotiations. As such, this claim is without merit and warrants no further consideration.

It is therefore

**ORDERED** that Graham's § 2255 motion is summarily dismissed.

**IT IS SO ORDERED**.

                                                                  s/Henry M. Herlong, Jr.
                                                                  United States District Judge

Greenville, South Carolina
June 5, 2009

**NOTICE OF RIGHT TO APPEAL**

The Movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.