IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No.: 6:03-cr-1092-10-HMH |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| TREMAYNE KIARR GRAHAM ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Government's Response to Defendant's Motion to Reduce Sentence
Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Tremayne Kiarr Graham has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying in part on the threat posed by the COVID-19 pandemic, despite the fact that the defendant is fully vaccinated. The United States respectfully opposes the motion. The Court should deny the motion with prejudice because the defendant has not met his burden of establishing that a sentence reduction is warranted under the statute. This Court should also deny the defendant's alternative request for an order directing BOP to transfer him to home confinement.

**Factual Background**

On March 27, 2006, the defendant was convicted of conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base (Count One), possession with intent to distribute cocaine (Count Two), conspiracy to launder money (Count Three), maintaining a stash house (Count Four), and failure to appear for a court hearing (Count Five). ECF No. 542. This Court sentenced him to life in prison for Counts One and Two, a concurrent 240 months imprisonment for Counts Three and Four and a consecutive 24 months for Count Five. ECF No.

1

716. On July 1, 2020, pursuant to the defendant's motion under § 404 of the First Step Act, this Court reduced the defendant's sentence to 360 months imprisonment for Counts One and Two, a concurrent 240 months imprisonment for Counts Three and Four and a consecutive 24 months for Count Five, followed by 5 years supervised release. ECF No. 1197. Thereafter, the defendant filed a motion to reduce his sentence pursuant to Amendment 782, which this Court denied. ECF Nos. 1199 and 1201. He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in immediate release from the custody of the Bureau of Prisons (BOP), relying, in part, on the threat posed by the COVID-19 pandemic.

I.      **BOP's Response to the COVID-19 Pandemic**

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

   A.  **Modified Operations**

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The Government recognizes that the COVID-19 case rate at a particular institution may change at any time. It therefore focuses primarily on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected, and some may succumb, just as in the population at large. But the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

As it specifically relates to the defendant, BOP's aggressive efforts have extended to FCI Butner Medium I. At present, there are no inmates who are positive for COVID-19. There are also 154 current inmates who previously tested positive and have recovered. There have been nine COVID-related deaths at this institution. The latest statistics are available at www.bop.gov/coronavirus.

### B.  COVID-19 Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine to do so.[1]

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of this time, BOP has administered a total of 169,508 doses to staff and inmates nationwide. *See* Federal Bureau of Prisons, "COVID-19 Coronavirus," www.bop.gov/coronavirus (last accessed May 17, 2021). As of mid-April 2021, BOP estimated that if it continued to receive

---

[1] Staff members may also obtain and have obtained vaccinations from other providers in the community.

doses at the then-current pace, it will have offered a vaccine to every inmate in its custody by June 1, 2021. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted). At FCI Butner, where the defendant is held, BOP has fully vaccinated 893 staff members and 2272 inmates, including the defendant. *See* Attachment 3.

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

**II.     The Defendant's Conviction and Request for a Sentence Reduction**

The Government concedes the defendant's prior criminal record and BOP disciplinary record are minimal. PSR ¶ 53 and Attachment 4. However, the seriousness of the crimes the defendant committed cannot be understated. Defendant participated in a nationwide, long-term drug and money laundering conspiracy. This conspiracy included members of the Black Mafia Family, which is an organized criminal group operating across the United States. PSR ¶ 24. The conspiracy, as a whole, was responsible for the distribution of hundreds of kilograms cocaine and millions of dollars in proceeds. PSR ¶¶ 23-41. The defendant alone was responsible for laundering $2,500,000 in proceeds. PSR ¶ 41. Additionally, the organization was responsible for the murder of a cooperating co-defendant and his girlfriend to prevent the co-defendant from testifying at trial, which the Government contends was at least partly organized by the defendant. PSR ¶¶ 26 and 27.

Days prior to the jury trial in this case, the defendant cut his ankle monitor and remained a fugitive for almost a year. PSR ¶¶ 28-32. When he was apprehended, he was found with 250

kilograms of cocaine, $1,800,000 in currency and firearms. PSR ¶ 32. While the Government commends the defendant for his efforts while incarcerated, those efforts do not discount the seriousness of the offenses for which he was convicted.

This Court previously granted the defendant's motion for a sentence reduction under § 404 of the First Step Act. ECF No. 1197. Thereafter, the defendant filed a motion to reduce sentence pursuant to Amendment 782. ECF No. 1199. Therefore, the Government believes any request for a sentence reduction based on the severity of his sentence has been adequately addressed in this Court's prior Orders and, therefore, the defendant's arguments on those grounds are moot. ECF Nos. 1197 and 1201.

On May 6, 2021, the defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant asserts that a lung issue from 2010, as a result of a stabbing, places him at a higher risk of contracting COVID-19. ECF No. 1209 at 4. The Government disagrees. First, his lung issue occurred over ten years ago. Second, the defendant's recent medical records show no recurring issues with his lungs. *See* Attachments 1-3. Third, the defendant's condition, if any, is not listed as an underlying medical condition which would place him at a high risk for severe COVID-19. *See* Centers for Disease Control and Prevention, "Underlying Medical Conditions,"

https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinicalcare/underlyingconditions.html     (last accessed May 17, 2021).

### III.     Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion

was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)–(C). Finally, the note recognizes the

7

possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

In *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020), the Fourth Circuit held the policy statement found in U.S.S.G. § 1B1.13—which applies to reductions in terms of imprisonment under § 3852(c)(1)(A)—does not apply to compassionate release motions *brought by inmates* under § 3582(c)(1)(A)(i). Under *McCoy*, because § 1B1.13 specifies its applicability only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. *Id*. In place of the no-longer-applicable policy statement, *McCoy* permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" *Id*. at 284.

As the court later explained in *United States v. High*, however, "§ 1B1.13, even though issued before Congress authorized defendant-filed motions, 'remains helpful guidance even when motions are filed by defendants.'" --- F.3d ----, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021) (quoting *McCoy*, 981 F.3d at 282 n.7). "Both before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same – that a court may reduce a sentence if it finds that extraordinary and compelling reasons warrant such a reduction." *Id.* (internal alteration and quotation marks omitted). And §1B1.13 "describes '*what should be considered* extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *Id.* (emphasis in original). Thus, *High* explained, although § 1B1.13 "is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might

8

reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for *defendant-filed* motions." *Id.* (emphasis in original).

## IV.     Arguments

The Government concedes the defendant has met his exhaustion requirement. However, this Court should deny the defendant's motion for a reduction in his sentence with prejudice on either of two independently sufficient grounds. First, the defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, the defendant has not met his burden to show that a reduction is warranted in light of the danger that the defendant would pose to the community and the relevant § 3553(a) factors. In addition, this Court lacks statutory authority to grant the defendant's alternative request to direct BOP to transfer him to home confinement.

### A. The Court Should Deny the Motion Because the Defendant Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and Because He Poses a Danger to Public Safety.

The Court should deny defendant's motion for a reduction of his sentence for two reasons. First, the defendant has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A). Second, the defendant poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

#### 1. The Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit therefore held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5–6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020)); *see also United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* Centers for Disease Control and Prevention, "Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed May 17, 2021). It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine

and presents a condition on that list presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[2]

Here, the defendant is not eligible for compassionate release because he has not identified any medical condition on the CDC's list of risk factors, or indeed any chronic medical ailment. The motion should therefore be denied. *See, e.g.*, *United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020) (denied for inmate who presents no health conditions).

Moreover, the defendant has received the Pfizer vaccine, which similarly precludes eligibility for compassionate release. *See, e.g.*, *United States v. Smith*, 2021 WL 364636, at *2

---

[2] Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the Government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* Centers for Disease Control and Prevention, "Underlying Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last accessed May 17, 2021). The Government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

(E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)").

The defendant has failed to demonstrate the existence of extraordinary and compelling circumstances that warrant compassionate release, and his motion should be denied. Further, the defendant has been fully vaccinated against COVID-19. *See* Attachment 3.

As a result, the defendant's motion for compassionate release should be denied. As the Government has explained, the guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). During this pandemic, the Government has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. The defendant has received a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download (last accessed May 17, 2021).

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found

that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA. BusinessWire, "Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns Through Up to Six Months Following Second Dose in Updated Topline Analysis of Landmark COVID-19 Vaccine Study," *available at* https://www.businesswire.com/news/home/20210401005365/en/ (last accessed May 17, 2021).

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." Centers for Disease Control and Prevention, "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, the defendant has been provided effective "self-care" against the virus and does not present any extraordinary and compelling reason allowing compassionate release. *See, e.g.*, *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody

protection to the virus. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release."). Recent decisions overwhelmingly agree with this assessment. *See, e.g.*, *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-19); *United States v. Johnson*, 2021 WL 1550460, at *5 (D. Minn. Apr. 20, 2021) (Frank, J.) ("To the extent Johnson remains concerned about contracting COVID-19 after receiving the vaccine, the Court finds this fear entirely speculative and declines to grant release based on a generalized fear of reinfection."); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021).

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, and that variants may emerge that bypass the vaccines. Courts have almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1–2 (D. Minn. Mar. 30, 2021). Accordingly, the prevailing view is that "absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary

14

and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation.")

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing would prevent the defendant from filing another motion for compassionate release. *United States v. Singh*, 2021 WL 928740, at *3–4 (M.D. Pa. Mar. 11, 2021) ("It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare the risk of severe disease from the virus. As inmates are vaccinated, this unprecedented period in which the threat of the virus sometimes gives rise to "extraordinary and compelling" circumstances should come to an end, and sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary");

*United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("a defendant's medical condition must be one of substantial severity and irremediability."). At present, the defendant does not present any such condition.

For all of these reasons, the defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(C), and compassionate release is not warranted here.

### 2. The Defendant Still Poses a Significant Danger to the Safety of the Community, and the § 3553(a) Factors Strongly Weigh Against Release.

Alternatively, the defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors. *See United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) ("a district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without 'considering the factors set forth in section 3553(a) to the extent that they are applicable'").

At present, the defendant's medical conditions, if any, are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, as evidenced by the defendant receiving the recommended two doses of the Pfizer vaccine.

In addition, the § 3553(a) factors strongly disfavor a sentence reduction. As discussed, the defendant was a conspirator in a large-scale drug trafficking and money laundering conspiracy that spanned the United States and included associations with members of the Black Family Mafia. In addition to the large amounts of drugs and money involved in the conspiracy, the defendant and others were involved in the murder of a cooperating co-conspirator and his girlfriend in an effort to prevent the co-conspirator from testifying against them at trial. Therefore, based on the seriousness of the offense, the need for adequate deterrence and the need to avoid unwarranted

sentencing disparities, the sentence imposed was appropriate and the factors weigh against any further reduction.

Moreover, the factors militating against a sentence reduction outweigh the defendant's asserted medical concerns related to COVID-19. There are currently no positive COVID-19 cases at the defendant's institution. Further, the defendant is fully vaccinated against COVID-19. *See* Attachment 3. Even if this Court concludes (contrary to the argument set forth in the previous section) the defendant has established "extraordinary and compelling reasons" for a sentence reduction based on the risk of contracting COVID-19, the defendant has not established that he would be less vulnerable to COVID-19 if he were released since there are no current cases of COVID-19 at the defendant's institution.

Accordingly, in light of the defendant's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

### B. This Court Has No Authority to Direct the BOP to Place the Defendant in Home Confinement.

The defendant has also asked in the alternative that this Court order BOP to place him in home confinement. That request should be denied because this Court has no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion.

Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993). Because the defendant's request for home

confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Following the imposition of sentence, the Court has limited authority to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. *See* § 3582(c). But the defendant's request to serve the rest of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. The defendant's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because the defendant offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request for such relief in this forum.[3]

---

[3] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. *See* § 3583(e)(2).

**Conclusion**

For these reasons, this Court should deny the defendant's motion on the merits.

        Respectfully Submitted,

        M. RHETT DEHART
        ACTING UNITED STATES ATTORNEY

        *s/ Brandon B. Hinton*
        Brandon B. Hinton, Fed. Bar No. 13186
        Assistant United States Attorney
        District of South Carolina
        55 Beattie Place, Suite 700
        Greenville, SC 29601
        Phone: (864) 282-2140